Jason Matthew JOSEPH,
Petitioner–Appellant,

v.

**Ronald ANGELONE, Director, Virginia Department of Corrections, Respondent–Appellee.**

No. 98–35.

United States Court of Appeals, Fourth Circuit.

Argued: April 6, 1999.

Decided: July 12, 1999.

**ARGUED:** James Orlando Broccoletti, Zoby & Broccoletti, Norfolk, Virginia, for Appellant. Robert Quentin Harris, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellee. **ON BRIEF:** Gary A. Bryant, Willcox & Savage, Norfolk, Virginia; Robert E. Lee, Jr., Virginia Capital Representation Resource Center, Richmond, Virginia, for Appellant. Mark L. Earley, Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellee.

Before WIDENER, MURNAGHAN, and MOTZ, Circuit Judges.

Dismissed by published opinion. Judge WIDENER wrote the opinion, in which Judge MURNAGHAN and Judge DIANA GRIBBON MOTZ joined.

## OPINION

WIDENER, Circuit Judge:

A Portsmouth, Virginia jury convicted Petitioner Jason Matthew Joseph of capital murder and related offenses connected with the October 1992 slaying of Jeffrey Anderson, a Subway Sandwich Shop employee, in the course of an armed robbery of the store. Joseph appeals the district

court's dismissal of his petition for writ of habeas corpus challenging that conviction. We deny Joseph's motion for a certificate of appealability and dismiss the appeal.[1]

## I.

At trial, the Commonwealth's evidence showed that on October 26,1992, a group of four individuals, including Joseph and his co-defendant Kiasi Powell, used marijuana and cocaine together. After exhausting their supply, the group decided to commit a robbery to secure enough funds to obtain more drugs. They selected a Subway store which Joseph and Powell entered together. Joseph was armed with a .45 caliber pistol.

Joseph ordered a sandwich from Anderson, the victim. Once Anderson had completed the order, Joseph cocked the pistol, telling him to open the cash register and drop to the floor. Anderson complied. Joseph shot him anyway. The Commonwealth's evidence to this effect included, but was not limited to, Powell's testimony, video from Subway's security cameras, and still photos extracted from that video.

At the sentencing phase of Joseph's trial, the Commonwealth put on evidence proving that Joseph had a range of convictions including assaulting a deputy sheriff, possession of cocaine, possession and use of various firearms, attempted robbery, robbery, and abduction. In response, Joseph offered mitigating evidence from his mother, his girlfriend, and a psychologist. The case went to the jury on the theory of future dangerousness.

The jury recommended, and the state trial court imposed, the death penalty for Anderson's murder, and the Virginia Supreme Court affirmed both his conviction and his sentence on January 15, 1995. *Joseph v. Commonwealth*, 249 Va. 78, 452 S.E.2d 862 (1995). The United States Supreme Court denied certiorari. *Joseph v. Virginia*, 516 U.S. 876, 116 S.Ct. 204, 133 L.Ed.2d 137 (1995). After completing state habeas corpus proceedings, Joseph filed a federal habeas petition in 1997. It is from the denial of that petition in September 1998 that Joseph appeals to this court for relief.

Joseph raises a number of issues for review. They include 1)whether Joseph's constitutional rights were violated by the trial court's refusal to allow Joseph the opportunity to inform the jury that, while parole eligible, he would not be eligible for a number of years; 2) whether, in any event, such a claim is prohibited by the "new rule" doctrine of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); 3) whether the district court erred in failing to provide Joseph an evidentiary hearing to consider whether or not jurors were influenced in their sentencing decision by a newspaper account of a comment allegedly made by Joseph following his conviction; 4) whether Joseph received ineffective assistance of counsel with respect to the presentation of mitigating evidence at sentencing; 5) whether the district court erred in determining that portions of that ineffective assistance of counsel claim were subject to procedural default due to Joseph's failure to raise them before the

---

1. Because Joseph's federal habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, we review his claims under that Act. *See Lindh v. Murphy*, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), *see also Cardwell v. Greene*, 152 F.3d 331, 336 (4th Cir.),*cert. denied,* —— U.S. ——, 119 S.Ct. 587, 142 L.Ed.2d 491 (1998). Accordingly, we cannot grant habeas relief on any claim adjudicated on the merits in state court unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

As we demonstrate, we are of opinion that the merits of any state court decision we have examined here was consistent with, and a reasonable application of, established federal law, either as determined by the Supreme Court of the United States or by this court. It is thus patent that no state court decision on the merits involved here was contrary to 28 U.S.C. § 2254(d)(1).

Virginia state courts; 6) whether Joseph procedurally defaulted his claim regarding the violation of his constitutional rights via the application of Virginia Code § 19.2–264.3:1 in the context of appointing mental health experts; and 7) if not, whether that issue entitles him to relief. We will deal with each issue in turn.

## II.

■ The circuit court of the city of Portsmouth tried Joseph for Anderson's murder in February 1994, prior to the United States Supreme Court's decision in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), decided in June of that same year. The Virginia Supreme Court decided the case on January 13, 1995. In *Simmons,* the Court held that when a State seeks the imposition of capital punishment on the ground of a defendant's future dangerousness, the Due Process Clause of the Fourteenth Amendment requires that the defendant be allowed to inform the jury that "the only available alternative sentence to death is life imprisonment without possibility of parole." *Simmons,* 512 U.S. at 178, 114 S.Ct. 2187 (Justice O'Connor, concurring); *Keel v. French,* 162 F.3d 263, 270 (4th Cir.1998) (recognizing "that Justice O'Connor's concurrence actually represents the holding in *Simmons* "). At the time of Joseph's sentencing, however, Virginia law forbade informing the jury regarding the defendant's eligibility for parole in the event of a life sentence. *Jenkins v. Commonwealth,* 244 Va. 445, 423 S.E.2d 360, 368–69 (1992). In accor-

dance with this proscription, the trial court overruled Joseph's motion to allow evidence on parole eligibility. The Virginia Supreme Court, however, had the benefit of *Simmons* when it initially reviewed Joseph's case in January of 1995, *Joseph v. Commonwealth,* 249 Va. 78, 452 S.E.2d 862, 866 (1995), and it, nevertheless, affirmed Joseph's sentence declaring *Simmons* inapplicable where a defendant is eligible for parole. Even if there is a legitimate dispute as to whether Joseph, if sentenced to life in prison, would have served twenty-five years on the one hand or thirty years on the other before becoming eligible for release on parole under Virginia law, there was never any question but that he would be eligible for parole if sentenced to life for Anderson's murder. The Virginia Supreme Court relied on language from Justice O'Connor's concurrence in *Simmons* to the effect that "[i]n a State in which parole is available, the Constitution does not require (or preclude) jury consideration of that fact." *Joseph,* 452 S.E.2d at 866 (quoting *Simmons,* 512 U.S. at 176, 114 S.Ct. 2187 (Justice O'Connor, concurring)). We affirm this aspect of the case for the same reason.[2]

## III.

■ Next, Joseph claims his state habeas corpus counsel was ineffective. He argues that the district court erred in failing to grant an evidentiary hearing to explore the alleged impact of a statement Joseph is now said to have made, and the effect of it and the newspaper report thereof, on the jury's decision to sentence him to death.[3]

---

2. See note 1, *supra.*

3. Following the trial on guilt or innocence, the jury returned its guilty verdict on the afternoon of Friday, March 4, 1995. On the Saturday following, the local newspaper ran a story reporting that, following the verdict, Joseph turned to the victim's widow and said "shit happens." Joseph's counsel both verify that they were present and saw or heard no such exchange, and that if it had happened, it could not have occurred in the presence of the jury. They were shocked when they read

the newspaper. The sentencing phase of Joseph's trial commenced on the following Monday, and the jury began its deliberations on that Tuesday, the very same day that the newspaper ran a follow up editorial on Joseph's alleged comment. Joseph has obtained affidavits from at least two jurors who now claim that they were both aware of Joseph's alleged statement and that it entered into their sentencing decisions. The affidavits do not mention the newspaper's treatment of the incident.

The district court noted that Joseph admitted failing to preserve his claim at trial, on direct appeal, or through his state habeas corpus proceeding. Indeed, the matter was not mentioned until the federal habeas corpus proceeding. Consequently, the district court held that Joseph's claim regarding the offensive article had been procedurally defaulted. We agree.

■ Joseph contends that he can escape the bar of procedural default under the cause and prejudice rule of *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). He argues that the failure of his state habeas counsel to investigate and present this issue demonstrates ineffective assistance of counsel at the state habeas level. That ineffective assistance, Joseph now argues, demonstrates the requisite cause under *Murray.*

■ As recognized not only by the district court, but also by Joseph himself, however, this argument is precluded by our en banc decision in *Mackall v. Angelone,* 131 F.3d 442 (4th Cir.1997). In *Mackall,* we determined that "[b]ecause [an inmate] has no right to effective assistance of counsel in his state habeas proceedings, he cannot demonstrate as cause to excuse the procedural default of his claims that his trial and appellate counsel were constitutionally defective." 131 F.3d at 449. Joseph invites us to reconsider our decision in *Mackall.* As a panel, we are not authorized to reconsider an en banc holding even if we happen to be so inclined, which we are not. See *Jones v. Angelone,* 94

F.3d 900, 905 (4th Cir.1996) (noting that a panel is not even authorized to reconsider the holding of another panel).

## IV.

Joseph also asserts several complaints with respect to certain mitigating evidence which was not presented at sentencing. Essentially, Joseph's mitigating evidence issues can be broken down into three parts. First, Joseph contends that he received ineffective assistance of counsel due to the failure of his attorneys to investigate and present evidence tending to prove that Joseph suffers from brain damage.[4] Second, Joseph claims that the mental health expert provided to him was ineffective, denying him a competent mental health evaluation. Finally, Joseph contends that both the Commonwealth and his own counsel were at fault in his failure to receive certain mental health records—the Commonwealth for not turning them over pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and his own counsel for failing to request them. Each of these claims must be denied.

### A.

■ The only portion of Joseph's mitigating evidence issue that the district court decided on the merits was his suggestion that his attorneys' failure to properly investigate and present mitigating evidence relative to possible brain damage constituted ineffective assistance of counsel.[5] The district court analyzed the steps

Although the case was before the Virginia Supreme Court twice, and the United States Supreme Court once, not one word was mentioned of this incident until the federal habeas petition.

4. Joseph now argues that his attorneys should have developed more evidence in mitigation of his crime by developing a more complete social history. He points, among other things, to evidence now developed of his unstable home environment, including the sheer size of his family, frequent moves, and his mother's many relationships; intolerable living conditions, including insufficient food and

medical treatment; domestic violence, both physical and sexual against his mother and sisters; family mental health issues, including a paranoid schizophrenic half brother with homicidal tendencies and a sister with petit mal brain seizures; his own experiences with head trauma, including a severe childhood concussion, several subsequent head injuries, and persisting migraine headaches; and other medical ailments including asthma and hypercalcemia.

5. The state court decided that this claim had "no merit," and the Commonwealth contends that this issue, too, should have been subject

taken by Joseph's attorneys in light of relevant case law and determined that their performance did not fall below the constitutional standard for effective assistance. Following our own similar inquiry, we too find that Joseph's counsel met the requisite level of competency in this regard. See *Smith v. Moore,* 137 F.3d 808, 817 (4th Cir.1998).

■ The Sixth Amendment entitles criminal defendants to effective assistance of counsel, that is, assistance which does not "so undermine[ ] the proper functioning of the adversarial process that the trial can not be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Effective assistance of counsel is a two prong inquiry requiring the petitioner to prove, first, that his counsel's performance was defective and, second, that he was prejudiced by that defective performance. *Strickland,* 466 U.S. at 687, 694, 104 S.Ct. 2052. In this instance, we need not look beyond the first prong as Joseph has failed to show defective performance on the part of his trial counsel.

■ Joseph alleges that there was readily available evidence at the time of his trial that he suffered from some brain damage or dysfunction which was compounded by his cocaine use at the time of the crime. Joseph contends that his trial counsel's investigation should have uncovered this evidence and led to its presentation as mitigating evidence at sentencing. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. The actions of Joseph's trial counsel were reasonable in the circumstances of this case.

Two psychologists evaluated Joseph in preparation for trial—Dr. Henry Gwaltney, the Commonwealth's expert, and Dr. Andrew Billups, the defense expert. Dr. Billups conducted eight sessions with Joseph, lasting between one and two hours each, during which he administered standard psychological testing. Dr. Billups further interviewed Joseph's mother, reviewed his high school records, and considered documents including trial transcripts and video tapes pertaining to this and Joseph's other criminal convictions. Following his extensive evaluation, Dr. Billups testified that Joseph was of "normal intelligence without any defect of memory or cognitive ability" and that "[t]here was no evidence of any difficulty in as far as his contact with reality, no evidence of delusions or psychosis, schizophrenia or any major types of mental illness."

Likewise, Dr. Gwaltney observed Joseph on and off for eleven days at Central State Hospital. He reviewed much of the same material as Dr. Billups, as well as Dr. Billups' own report, and conducted a variety of physical and laboratory tests. Like Dr. Billups, Dr. Gwaltney also concluded that Joseph suffered from "no diagnosable mental disorder."

■ Not by hindsight, we "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. It was perfectly reasonable for Joseph's trial counsel to believe that Dr. Billups, a psychologist with specialized training in capital sentencing, had ample opportunity to elicit the types of medical and family information that Joseph now claims were material to his defense and to depend on him, which they did.

Furthermore, Joseph's trial attorneys were limited in how far they could press Dr. Billups with respect to Joseph's future

to procedural default. Because we agree with the district court that Joseph's claim regarding his counsel's assistance in developing mitigating evidence is without merit, we

need not address the claim of procedural default as to this claim. See *Coleman v. Thompson,* 501 U.S. 722, 732–735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

dangerousness, without emphasizing Dr. Gwaltney's forthcoming testimony, which they knew about, that Joseph was a future danger, testimony which Dr. Billups could not rebut. This was a reasonable strategic decision made after thorough investigation of law and facts and one which will not be revisited by this court. *Strickland,* 466 U.S. at 690–91, 104 S.Ct. 2052.[6]

### B.

■■■ Joseph further contends that his constitutional rights were compromised because Dr. Billups did not provide him with a competent mental health examination. The district court determined that this claim had been procedurally defaulted due to Joseph's failure to raise it on direct appeal.

Joseph notes correctly, however, that the issue was raised in state habeas and decided on the merits, and we note the district court alternately decided the claim was without merit. It found Joseph's claim to be without merit in light of circuit precedent which forecloses a right to an effective expert witness.[7] See *Wilson v. Greene,* 155 F.3d 396, 401 (4th Cir.1998) ("The Constitution does not entitle a criminal defendant to the effective assistance of an expert witness."); *Poyner v. Murray,* 964 F.2d 1404, 1419 (4th Cir.1992); *Waye v. Murray,* 884 F.2d 765, 767 (4th Cir. 1989).

Joseph relies on some of the language in *Ake v. Oklahoma,* 470 U.S. 68, 83, 105 S.Ct. 1087 (1996), which refers to the necessity of a "competent" mental health expert and an "appropriate" evaluation. We have noted, however, that "[a]lthough *Ake* refers to an 'appropriate' evaluation, we doubt that the Due Process Clause prescribes a malpractice standard for a court appointed psychiatrist's performance. Rather, the decision in *Ake* reflects pri-

marily a concern with ensuring a defendant *access* to a psychiatrist or psychologist, not with guaranteeing a particular substantive result." *Wilson,* 155 F.3d at 401 (italics in original).

As we reasoned in *Wilson,* "[e]ven if *Ake*'s use of the term 'appropriate' suggests that an examination must satisfy some minimal level of professional competence," Dr. Billups' met that standard here. 155 F.3d at 402. The expert in *Wilson* met with the defendant on two separate occasions to discuss his background and evaluate his cognitive processes, and we found his evaluation to be appropriate. 155 F.3d at 402–03. Here, Dr. Billups conducted eight extensive sessions with Joseph during which he conducted various psychological tests and clinical interviews. He also reviewed other documents and evidence relating to the crime in question, Joseph's prior criminal convictions, and his educational background. He testified for Joseph in the sentencing part of the trial. We are of opinion his was an appropriate examination under the standard of *Ake.*[8]

### C.

Finally, Joseph blames both the Commonwealth and his trial counsel for failure to produce the Central State Hospital records which both Dr. Billups and his trial counsel in hindsight now assert would have assisted in their preparation of mitigating evidence. As the district court recognized, Joseph readily admits that he failed to raise any claim against the Commonwealth prior to his federal habeas petition. He attempts to excuse that procedural default by arguing ineffective assistance on the part of his state habeas counsel. As discussed above, that avenue is foreclosed by our decision in *Mackall v. Angelone,* 131 F.3d at 449.

---

6. See note 1, *supra.*

7. We express no opinion on the claim of procedural default but decide the question on the

merits. See *Coleman v. Thompson,* 501 U.S. 722, 732–735, 111 S.Ct. 2546 (1991).

8. See note 1, *supra.*

The district court also found procedural default with respect to Joseph's claim of ineffective assistance against his trial attorneys for failure to obtain the Central State Hospital records. In doing so, the district court correctly determined that Joseph's state habeas petition failed to mention "the Central State Hospital records specifically or the failure to obtain hospital records generally other than vague references to the failure to investigate Joseph's mental and social history."

In order to avoid procedural default, the "substance" of Joseph's claim must have been "fairly presented" in state court. *Townes v. Murray,* 68 F.3d 840, 846 (4th Cir.1995) (quoting *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (citation omitted)). That requires "[t]he ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Townes,* 68 F.3d at 846 (quoting *Mallory v. Smith,* 27 F.3d 991, 995 (4th Cir.1994) (citation omitted)). In arguing against procedural default of this issue, Joseph points to an argument he made in state court claiming ineffective assistance of counsel because the attorneys provided to him by the public defender's office were overburdened and provided inadequate resources. He went on to contend that the efforts of the investigator shared by that office were deficient. It is in that context, not in the context of his attorney's failure to procure specific records from Central State Hospital, that Joseph stated "[f]or example, the collection of records was insufficient and there was no analysis and follow-up investigation based on these records."

We agree with the district court that this complaint about the investigator in the public defender's office does not fairly present the substance of Joseph's current claim that his trial counsel was ineffective in his failure to procure the Central State Records. Although it is most doubtful that the issue was presented at all in the state courts, any allusion to the issue was not "face-up and squarely" as required by *Townes.* The district court is affirmed on the issue.

## V.

The last assignment of error is that Virginia Code § 19.2–264.3:1 is invalid. The assignment of error as copied from the brief is that:

> The application of Virginia Code § 19.2–264.3:1 violated Mr. Joseph's Fifth, Eighth and Fourteenth Amendment rights.

This point was not raised on direct appeal and, accordingly, if that were all, the claim of the Commonwealth that the issue is procedurally defaulted would be valid. But in the state habeas corpus petition, under part III thereof concerning Joseph's claim of a denial of "his right to constitutionally effective assistance of counsel" in paragraph 83, is the claim that

> [Joseph] could not receive appointment of the expert [witness with respect to his mental competency] unless he complied with additional requirements of the Virginia statute. The application of the statutory restrictions, however, violated petitioner's rights in at least two manners. First, it required petitioner to forego his Fifth Amendment right to remain silent, in order to exercise his Sixth and Fourteenth Amendment rights to confront the evidence against him, to present evidence on his behalf, and to have the assistance of counsel in a fair trial. Second, petitioner was not given notice of the extent or nature of any waiver as required by due process.

The claim is that his trial attorneys were ineffective for not objecting to the application of that statute to him. While the validity of the statute is decided here in the context of a failure to object on account of the invalidity of the statute, or an application thereof to Joseph, if the statute was valid and its application to Joseph was valid, then there could have been no inef-

fective representation by Joseph's attorneys in failing to object to a valid statute. The Commonwealth argues that the point has been procedurally waived, but the district court decided that aspect of the claim on the merits on the grounds that the statute had not been declared invalid and there was no reason to think that it was. Although the question procedurally may be a close one, the action of the Virginia Supreme Court in denying the petition for habeas corpus in which it decided that it found "no merit in petitioner's allegations I, III, ..." gives us reason to treat the case the same way as did the district court, perhaps with a somewhat fuller explanation.

Well in time, Joseph asked for the appointment of an expert witness to assist his defense. The code section requires the court to appoint one or more qualified mental health experts to evaluate the defendant and assist the defense. This was done and Dr. Billups was appointed. Then Joseph gave notice that he sought an evaluation to determine the existence or absence of mitigating circumstances relating to his mental condition. The court then appointed a physician for the Commonwealth to examine Joseph in the same respect. For that Dr. Gwaltney was appointed, and he also examined Joseph. Dr. Gwaltney testified for the Commonwealth during the sentencing aspect of the trial and Dr. Billups testified for Joseph. Subsections A, E and F of Va.Code § 19.2–264.3:1 involve the actions just described by Joseph, the Commonwealth and the court. So far as the validity of the statute is concerned, we have decided in *Savino v. Murray*, 82 F.3d 593 (4th Cir. 1996), on facts not distinguishable from those present here, that the statute and its application is constitutionally valid,and we see no reason to depart from that holding, which we follow.

■ So far as the particular application of the statute to Joseph is concerned, which the defendant argues obviously in an attempt to distinguish this case from *Savi-*

*no*, we will discuss that with more particularity.

"[A]t the sentencing phase of Mr. Joseph's trial, Dr. Gwaltney informed the jury that during his examination of Mr. Joseph at Central State Hospital, Mr. Joseph had denied involvement in the claim and, based upon that denial, Dr. Gwaltney opined that Mr. Joseph lacked 'insight and judgment.'" That is Joseph's claim, Brief, p. 52–53. Dr. Gwaltney had arrived at this conclusion because Joseph had told Dr. Billups, and, as well, himself and Dr. Ryan, that he was not at the restaurant at the time of the shooting. In other words, he denied involvement in the crime.

■ The claim now is that this is a violation of subsection G of the statute, which precludes "evidence derived from any such statement" to the physicians by the defendant. So far as the record in this case goes, that is factually true, but its introduction was not error for two reasons. First, Dr. Billups, Joseph's witness, had testified on cross-examination that Joseph had told him he was not at the scene of the crime. While the evidence was brought out by the Commonwealth on the cross-examination of a defendant's witness, a defendant cannot place his mental condition in issue, as Joseph had, and then object to the conversations he had with his own expert witness in ascertaining that condition. So his attorney properly did not object to the introduction of the statement by Dr. Billups. The statement complained of, however, as to the conclusion Dr. Gwaltney drew from the same statement, was not brought out by the Commonwealth. It was introduced by Joseph's own attorney on cross-examination of Dr. Gwaltney, who was then testifying for the Commonwealth. The question and answer were:

Q: And in your report you indicate that you found Mr. Joseph to lack insight and judgment, about the middle of page 2 of your report?

A: That is an accurate statement.

As noted, Dr. Gwaltney had concluded this from the fact that Joseph denied being at the scene of the crime both to him and to Dr. Billups. There was no objection to the question and it is at once apparent it was a legitimate effort by Joseph's attorney to show a lack of mental insight and judgment which could only have ameliorated the seriousness of the offense and certainly not magnified it. Joseph now attempts to convert this quite commendable effort on the part of his attorney into error, which claim we think is not well taken. In at least two cases on collateral review, we have held that such invited error precludes consideration of the claim. *United States v. Herrera*, 23 F.3d 74 (4th Cir.1994), and *Wilson v. Lindler*, 8 F.3d 173 (4th Cir.1993) (en banc). We adhere to those decisions and are of opinion that the position of Joseph is without merit.[9]

We thus deny a certificate of appealability, and the appeal is accordingly

*DISMISSED.*