UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MARIA STETTER,
          *Plaintiff-Appellant,*

v.

DONNA E. SHALALA, SECRETARY OF
HEALTH AND HUMAN SERVICES,
          *Defendant-Appellee.*

⎫
⎬  No. 98-2201
⎭

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
William M. Nickerson, District Judge.
(CA-95-3848-WMN)

Argued: April 4, 2001

Decided: June 18, 2001

Before WILKINSON, Chief Judge, and LUTTIG and
GREGORY, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Gregory wrote the opinion,
in which Chief Judge Wilkinson and Judge Luttig joined.

---

## COUNSEL

**ARGUED:** Charles J. Engel, III, HOWREY, SIMON, ARNOLD &
WHITE, L.L.P., Washington, D.C., for Appellant. Donna Carol
Sanger, Assistant United States Attorney, Baltimore, Maryland, for
Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney,
A. David Copperthite, Assistant United States Attorney, Baltimore,
Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

GREGORY, Circuit Judge:

Maria Stetter ("Plaintiff") appeals the district court's denial of her motion for a new trial in a sexual harassment case. The district court refrained from providing certain highly specific jury instructions that Plaintiff requested, and Plaintiff now argues that the court abused its discretion in doing so. Plaintiff also contends that the court abused its discretion in failing to allow her to impeach a witness with deposition testimony related to a document the court had ruled inadmissible pursuant to a motion *in limine*.

In addition, Plaintiff claims that the court abused its discretion in prohibiting her from referring to this document after the defendant "opened the door" by claiming that certain remedial acts it took constituted "reasonable care." Lastly, Plaintiff argues that the court erred in refusing to allow her to argue that money she spent obtaining a restraining order in state court against one of her co-workers was recoverable as damages. For reasons discussed below, we find that the district court committed no error, and we therefore affirm.

I.

In 1998, Plaintiff was promoted to the position of Acting Deputy of the Mental Health Branch of the Indian Health Service ("IHS") in Albuquerque, New Mexico. IHS is a part of the U.S. Public Health Service, which is a division of the U.S. Department of Health and Human Services. In February 1992, Frank Canizales ("Canizales") commenced employment at the Mental Health Branch. Although Plaintiff still held administrative duties, including responsibility for the office budget as well as "quality assurance and training," she no longer held the Acting Deputy position when Canizales arrived.

Plaintiff and others at the Mental Health Branch experienced considerable conflict with Canizales. Plaintiff introduced evidence at trial

demonstrating that Canizales often became angry at work and used abusive and threatening language toward Plaintiff and others, particularly women. Plaintiff also introduced evidence indicating that Canizales repeatedly engaged in physically threatening conduct against Plaintiff and three other women in the office. The evidence demonstrated that these women perceived Canizales' threats as serious.

As a result of conflict in the office, Canizales was placed on medical leave for a five-week period from March 20 to April 26, 1993. He returned to the Mental Health Branch in May. Shortly thereafter, Plaintiff disapproved a leave request by Canizales, and Dr. Scott Nelson ("Dr. Nelson"), a supervisor at the Mental Health Branch, gave Canizales an unsuccessful performance rating. Canizales became upset and reportedly stated that he was afraid that he might injure Plaintiff, Dr. Nelson, and another supervisor. Although Canizales left that day without incident, friction continued in the office. Eventually, Canizales was given numerous off-site assignments.

In early 1994, the various programs of the IHS in Albuquerque moved into a central building. As part of his new responsibilities, Canizales was assigned to a time-sensitive project that required him to be in Albuquerque. Canizales' supervisor sought permission to permit Canizales to have an office in the new headquarters building. To address the concerns of Plaintiff and others, a management official sought to negotiate an agreement to limit Canizales' presence in the building. However, Plaintiff rejected the agreement, instead filing a state court proceeding and obtaining a preliminary injunction against Canizales.

In 1995, Canizales asked to attend general meetings held for all employees in the building. An arrangement was made to permit Canizales in the building to attend the meetings under escort, to allow the women in the office who found Canizales offensive to take administrative leave if they desired, and to schedule multiple sessions to avoid contact between the parties. Plaintiff objected to having Canizales in the building at all. Plaintiff and three other women subsequently filed and pursued their own administrative remedies.

On December 15, 1995, Plaintiff filed suit in the United States District Court for the District of Maryland against Donna E. Shalala in

her official capacity as Secretary of the U.S. Department of Health and Human Services. The complaint sought injunctive relief, back pay, compensatory damages, attorneys' fees, costs, and other equitable relief for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e (West 1994 & Supp. 2000). Count I alleged that Plaintiff had been subjected to sexual harassment in the form of a hostile working environment. The allegations focused on the environment created by Canizales.

On March 10, 1998, a jury was impaneled and trial commenced. On March 24, 1998, the jury returned a verdict in favor of the defendant. On April 9, 1998, Plaintiff filed a motion for a new trial. Plaintiff argued, *inter alia*, that the special verdict was against the weight of the evidence and attempted to show that the improperly instructed jury could not have understood that threats of physical violence and related threatening conduct could create a hostile environment. The district court denied the motion on June 6, 1998. Plaintiff filed this appeal on August 3, 1998.

## II.

Plaintiff contends that the district court committed several evidentiary and instructional errors. These claims are reviewed for an abuse of discretion. *Sasaki v. Class*, 92 F.3d 232, 241 (4th Cir. 1996) (citing *United States v. Heater*, 63 F.3d 311, 321 (4th Cir. 1995)). Where a litigant contends that jury instructions were not as complete as the litigant would like, the test "is simply the practical one of whether the instructions, construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." *Sasaki*, 92 F.3d at 242 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987)).

## III.

### A.

Plaintiff first argues that the district court abused its discretion by interrupting, *sua sponte*, mistaken testimony that she elicited from

Ms. Cecilia Heftel, the Director of Equal Opportunity Employment for the IHS ("Ms. Heftel"), and by preventing her from correcting the testimony. We conclude, however, that the court did not abuse its discretion because allowing the witness to testify further would have improperly usurped the court's role as the instructor of the law.

On direct examination of Ms. Heftel at trial, Plaintiff's counsel asked if threats of violence were "relevant in the context of EEO policy." (J.A. at 266.) Ms. Heftel, a non-attorney, responded, "Absolutely not." *Id.* Plaintiff's counsel then asked if EEO had a "policy against threats of violence." *Id.* Ms. Heftel replied, "The office of general counsel, the attorneys that represent us from that office have consistently advised me that violence in the workplace — ." " At that point, the court interrupted Ms. Heftel's testimony and informed the jury that it would later instruct on the law. *Id.* at 265-66.

Plaintiff contends that Ms. Heftel's testimony left the jury with an erroneous impression of the law that fatally prejudiced her case. Accordingly, Plaintiff argues that the court abused its discretion by interrupting the testimony and prohibiting Plaintiff from correcting Ms. Heftel's misstatement of the law. *Id.* Federal Rules of Evidence 701 and 702 establish that opinions must be helpful to the trier of fact.[1] Rules 403 and 611 provide for the exclusion of evidence that wastes time.[2] Rule 403 also provides for the exclusion of evidence that may

---

[1]Rule 701 of the Federal Rules of Evidence provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

[2]Rule 403 of the Federal Rules of Evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 611 provides:

unfairly prejudice, confuse, or mislead the jury. Taken together, these provisions prohibit admission of opinions that simply "tell the jury what result to reach." *See*, *e.g.*, *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

Testimony containing a legal conclusion is problematic, in part, because it may convey erroneous legal standards to the jury, thereby invading "the province of the court to determine the applicable law and to instruct the jury as to that law." *Id.* (citations omitted). Here, permitting Ms. Heftel to testify further as to her opinion of the law, or to the legal advice she received from the general counsel's office, clearly would have usurped the district court's role to instruct the jury on the law. *See*, *e.g.*, *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (trial court's role is "to state to the jury the meaning and application of the appropriate law"); *see Torres*, 758 F.2d at 150 (error for witness to opine as to whether or not discrimination occurred as calling for a legal conclusion).[3] Accordingly, the district court did not abuse its discretion in interrupting this line of questioning.[4]

---

"The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

[3]The court also could have properly excluded such evidence because it (a) would not have helped the jury; (b) would have wasted time; or (c) would have unfairly prejudiced, confused, or misled the jury. Simply put, permitting the jury to hear additional legal conclusions — particularly ones that were likely to reinforce the erroneous view — would not have helped the jury serve its proper function.

[4]Even, however, if the court's interruption was error, Plaintiff invited the error by asking the witness questions ostensibly designed to elicit a legal conclusion. The "invited error" doctrine is a branch of waiver doctrine under which courts prevent a party from inducing the court to take an erroneous step and later complaining about the error. Because Plaintiff invited the very testimony which she now seeks to claim prejudiced her case, even if this Court were to find that the trial judge committed error, we would refuse to countenance Plaintiff's claim. *See*, *e.g.*, *United States v. Neal*, 78 F.3d 901, 904 (4th Cir. 1996)(defendant invited error

B.

Plaintiff next contends that the court abused its discretion by failing to give each of two requested jury instructions. The first instruction would have specifically informed the jury that physically threatening or humiliating conduct can create a hostile environment. The second would have explicitly indicated that harassment must be determined by looking at "all of the circumstances" or "the totality of the circumstances."

Plaintiff's main contention is that a number of incidents that took place during the trial created a need for these two instructions. Plaintiff first points to the incident described in section III.A., above, in which the court, *sua sponte*, interrupted Ms. Heftel's testimony. Plaintiff then turns to a number of occasions in which defense counsel asked various witnesses questions that, according to Plaintiff, implied to the jury that violent threats are not relevant to sexual harassment claims. Finally, Plaintiff asserts that on two occasions, the court indicated to the jury that it would later instruct on the proper elements of a sexual harassment claim based on a hostile work environment theory.

The combination of these incidents, in Plaintiff's view, created the need for highly specific jury instructions, including the "threatening conduct" instruction and the "totality of the circumstances" instruction. In the absence of those instructions, Plaintiff argues, the jury was misled to believe that physically threatening or humiliating conduct is irrelevant to a hostile environment claim. Since Plaintiff's evidence at trial primarily focused on this type of conduct, Plaintiff contends that the jury's confusion effectively gutted her case. Here again, we find Plaintiff's arguments unavailing. We first discuss the threatening conduct instruction.

---

by himself eliciting statements he later challenged on appeal); *Wilson v. Lindler*, 8 F.3d 173, 175 (4th Cir.1993) (en banc) (defendant invited instruction error through encouragement of particular theory); *Ridge v. Cessna Aircraft Co.*, 117 F.3d 126, 129 (4th Cir. 1997) (defendant invited error by tacitly agreeing to jury's use of model aircraft); *United States v. Joseph*, 184 F.3d 320, 329 (4th Cir. 1999) (defendant's counsel invited error by eliciting testimony on cross-examination).

1.

In *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), the Supreme Court held that there is no "mathematically precise test" for determining whether an environment is "hostile" or "abusive," and that this "can be determined only by looking at all the circumstances." *Harris*, 510 U.S. at 23. The Court explained that these circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* This Court has held that a district court does not abuse its discretion by refraining from elaborating on the specific circumstances outlined in *Harris*. *Sasaki v. Class*, 92 F.3d 232, 242 (4th Cir. 1996). This is so because while *Harris* stated that all circumstances must be considered, it "did not state that a jury was *required* to consider [the specific] four circumstances or that each of the circumstances had to be present for a plaintiff to prevail." *Id.*

In its "Memorandum Opinion" denying Plaintiff's request for a new trial, the court below stated that the "threatening conduct" instruction was not given "because the [c]ourt perceived the instruction as misleading." (J.A. at 987.) The court reasoned that "[t]he proposed instruction conceivably could have been misunderstood by a juror to mean that threatening conduct may constitute sexual harassment - without regard to an employer's remedial efforts or the other elements required under [*Harris*] and its progeny." *Id.*

After thoroughly reviewing the evidence and considering each of Plaintiff's arguments, we conclude that the district court was well within its discretion to reject the "threatening conduct" instruction. A trial court has broad discretion to frame jury instructions and is not bound to give them in the precise form or language requested. *See Sasaki*, 92 F.3d at 242. Taken as a whole, the jury instructions used in this case fairly and adequately stated the relevant legal principles, including the elements essential to a hostile or abusive environment claim. After the court correctly relayed the elements to the jury, it was a matter of the court's discretion whether or not to provide more specific instructions. The trial judge was more appropriately positioned than this Court to judge the potential impact of the "threatening conduct" instruction on the jury. For these reasons, we cannot say that the

court abused its discretion in refraining from providing the "threatening conduct" instruction.[5]

## 2.

Plaintiff also argues that the failure to provide an instruction specifically indicating that the jury must consider "all of the circumstances" or "the totality of the circumstances" was an abuse of discretion. The jury instructions provided, *inter alia*:

> You may consider not only the evidence to which I may refer, and the evidence to which you may be referred by counsel in their arguments, but you may also consider any testimony or exhibits in the case, whether or not referred to by me or by counsel, which you may believe to be material.

(J.A. at 858-59.)

Plaintiff's argument requires a quite literal reading of *Sasaki*, in which we stated that "the law requires consideration of *all* the circumstances." *Sasaki*, 92 F.3d at 242. However, while *Sasaki* mandates that juries "consider all the circumstances" when deciding hostile environment claims, it does not require that courts use this precise language. Here, the court instructed the jury to consider all of the evidence. Plaintiff's argument that she was unfairly prejudiced because the court did not instruct the jury to consider all of the circumstances simply points out a distinction without a difference.

---

[5]We also reject Plaintiff's argument that the special verdict sheet demonstrates that the jury misunderstood the relevance of threatening conduct and that this misunderstanding "effectively directed a verdict" for the defendant. (Brief of Appellant at 19.) To the contrary, the verdict sheet demonstrates that the jury carefully considered each of the four elements of a hostile environment claim. At least three, and as many as five, jurors found that the Plaintiff was subjected to "harassment." Yet all ten jurors found both that the harassment was not based on sex, and that the defendant had taken prompt and adequate remedial action to end the harassment. Thus, every one of the jurors who found that Plaintiff suffered harassment also found that Plaintiff failed to carry her burden on two critical elements. As the court below noted, it appears that the jury had sufficient evidence upon which to reach its verdict.

As noted above, the jury instructions, when taken as a whole in light of the entire record, fairly and adequately stated the controlling legal principles. We therefore conclude that the court did not abuse its discretion in failing to provide a specific "totality" instruction.

C.

Plaintiff also contends that the district court abused its discretion by preventing Plaintiff from mentioning a particular investigation and report generated during the EEO complaint process. The report, which was authored by the U.S. Office of Personnel Management, generally condemned IHS's inaction and found that Plaintiff had been subjected to sexual harassment. The district court suppressed the report pursuant to a motion *in limine* on the grounds that it was "generally untrustworthy" and its probative value was substantially outweighed by the danger of unfair prejudice. (J.A. at 73-74.)

Plaintiff also asserts that the court should have allowed her to refer to the report after the defendant "opened the door" by arguing that certain of the defendant's actions constituted acts of reasonable care exercised by the agency. Plaintiff's theory is that because these acts were motivated by the criticism leveled in the report, they did not constitute acts amounting to an exercise of reasonable care.

Under the law of this Circuit, the exclusion of the report clearly was not an abuse of discretion. *See Cox v. Babcock & Wilcox Co.*, 471 F.2d 13, 15 (4th Cir. 1972) (rejecting admissibility of EEOC investigative report); *United States v. MacDonald*, 688 F.2d 224, 230 (4th Cir. 1982) (noting that evaluative public records may suffer from an undue risk of prejudice, and may "undermine the exclusive province of the jury."). Moreover, even assuming the relevant acts were taken in response to the commencement of an investigation, Plaintiff does not clearly articulate why these acts are, on this basis alone, transformed into unreasonable acts. For these reasons, we reject Plaintiff's argument and conclude that the district court acted properly in preventing Plaintiff from mentioning the report at trial.[6]

---

[6]Because we find that Plaintiff's initial arguments have no merit, it is unnecessary for us to consider Plaintiff's contention that the district court abused its discretion by instructing the jury that certain sums Plaintiff spent to enforce a restraining order against Canizales could not be considered as damages.

## IV.

For the foregoing reasons, the judgment of the district court is hereby affirmed.

*AFFIRMED*