**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Friday, the 2nd day of November, 2007.

Larry Bill Elliott,                                          Petitioner,

    against           Record No. 050573

Warden of the Sussex I State Prison,                         Respondent.

Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed April 5, 2005, the respondent's motion to dismiss, and the petitioner's reply to the respondent's motion to dismiss, the Court is of the opinion that the motion should be granted and the writ should not issue.

Larry Bill Elliott was convicted in the Circuit Court of Prince William County of one count of capital murder of Dana Thrall, one count of first-degree murder of Robert Finch, and two counts of use of a firearm in the commission of a felony. Finding that the Commonwealth had proven the aggravating factor of "vileness" beyond a reasonable doubt, see Code § 19.2-264.2, the jury fixed Elliott's sentence at death on the capital murder conviction and at one life sentence plus eight years' imprisonment for the non-capital convictions. The trial court sentenced Elliott in accordance with the jury's verdict. This Court affirmed

Elliott's convictions and sentence of death. Elliott v. Commonwealth, 267 Va. 396, 431, 593 S.E.2d 270, 292 (2004), cert. denied, 543 U.S. 1081 (2005).

Section (I) of the petition for a writ of habeas corpus does not contain any claims.

Procedural Defaults

In claim (II), petitioner raises several allegations that the Commonwealth failed to meet its obligations under Brady v. Maryland, 373 U.S. 83 (1963) by withholding certain material and exculpatory evidence.

In claim (II)(1), petitioner alleges the Commonwealth did not disclose statements "of the Thrall boy(s) likely containing exculpatory evidence about a black man leaving the house." Petitioner relies on several affidavits containing hearsay information that at least one of the Thrall boys said he saw "either a black man or a man wearing black running from the rear of the townhouse." Petitioner, however, has proffered no evidence properly before this Court to demonstrate that the Commonwealth had exculpatory evidence that was not disclosed. The record, including affidavits by the Commonwealth's Attorneys involved in the case, demonstrates that neither the police nor these attorneys had any knowledge of any exculpatory statements made by the Thrall children.

In claim (II)(6), petitioner alleges that the Commonwealth did not provide reports on all of Rebecca Gragg's polygraph tests.

2

Petitioner contends that Gragg, who was Finch's ex-girlfriend, was subjected to a third polygraph examination and argues that any inconsistent statements Gragg made during administration of the third test could have been used to impeach her trial testimony. Petitioner has proffered no evidence properly before this Court to support his claim that a third polygraph test was administered. The record, including affidavits of the Commonwealth's Attorney and the polygrapher, demonstrates that there were only two polygraph tests administered by the Commonwealth in connection with the investigation.

The Court holds that the alleged Brady violations contained in claims (II)(1) and (II)(6) are factually without merit. Petitioner has proffered no evidence properly before the Court to support the allegations and, thus, has failed to establish that the Commonwealth withheld any exculpatory evidence in violation of Brady.

In claim (II)(2), petitioner alleges that the Commonwealth did not produce photographs, provided by Robert Finch's parents, depicting Finch after he allegedly had been severely beaten by friends of Rebecca Gragg. The record, including the trial transcript, demonstrates that petitioner was aware, at trial, of the alleged existence of these photographs and of the Commonwealth's denial that the photographs existed.

In claim (II)(3), petitioner alleges that the Commonwealth did not provide a recording of a conversation between Gragg and

Detective Charles Hoffman during a "smoke break" from the police interrogation of Gragg on May 10, 2001. The record, including the trial transcripts and the issues raised on appeal, demonstrates that petitioner was aware of this conversation that took place on May 10 and questioned whether or not it was recorded. Although petitioner raised a similar claim on direct appeal, this Court determined the argument to be waived because petitioner had not raised the same argument at trial.

In claims (II)(4) and (II)(5), petitioner alleges that the Commonwealth did not provide reports prepared by Detectives Masterson, Hoffman, and McClelland with regard to a request Gragg allegedly made for a copy of her written statement to police, which was allegedly prepared after a conversation Gragg had with officers during a "smoke break." Petitioner contends also that Gragg believed her written statement had been prepared on a computer and that the Commonwealth did not provide an electronic version of Gragg's statement. The record, including the trial transcripts, petitioner's direct appeal brief, and this Court's opinion on direct appeal, demonstrates that the issue of whether a written statement of the "smoke break" conversation existed was raised at trial and that the detectives involved denied that such a statement existed. This Court rejected petitioner's argument on direct appeal because the argument was different than the one petitioner raised at trial.

4

In claim (II)(7), petitioner alleges that the Commonwealth intentionally ignored evidence implicating others present at the crime scene. Petitioner argues that, although forensic testing confirmed that the blood and DNA found on the front and back doors of the house and on Finch's jeans did not belong to petitioner, the Commonwealth did not attempt to learn the source of this DNA.

In claim (II)(8), petitioner alleges that, taken together, his allegations of Brady violations show materiality because but for the violations, he could have impeached the testimony of Gragg and Hoffman.

In claim (III)(A), petitioner claims that his rights under Napue v. Illinois, 360 U.S. 264 (1959) and Giglio v. United States, 405 U.S. 150, 153 (1972) were violated when Officer Thomas Leo falsely testified that he collected blood from the back gate on January 2, 2001, instead of on a different date, and when the Commonwealth then presented false evidence by submitting the blood sample marked with the January 2 date.

In claim (III)(B), petitioner claims his rights under Napue and Giglio were violated when Detective Charles Hoffman testified falsely on three occasions. Petitioner alleges that Hoffman lied when he testified that he never received any photographs showing Finch had been assaulted and when he explained why he used the word "polygrapher" during his testimony. Petitioner further alleges that Hoffman appeared to commit perjury when his testimony about

5

the existence of a tape recording of a conversation that occurred during a "smoke break" differed from Gragg's testimony.

In claim (III)(C), petitioner alleges that the Commonwealth improperly "sponsored" Gragg's testimony despite questions concerning Gragg's credibility before trial. Petitioner contends that the Commonwealth "vouched" for Gragg as a principal witness and solicited false testimony from her.

In claim (III)(D), petitioner alleges that the cumulative impact of the Giglio and Napue right violations proves a reasonable likelihood that the Commonwealth knowingly presented false testimony, which affected the jury's judgment.

The Court holds that claims (II)(2), (II)(3), (II)(4), (II)(5), (II)(7), (II)(8), (III)(A), (III)(B), (III)(C) and (III)(D) are procedurally defaulted because these non-jurisdictional issues could have been raised at trial and on direct appeal and, thus, are not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975).

### Ineffective Assistance of Counsel Claims

In claim (IV)(A), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to adequately investigate and prepare for trial. Petitioner asserts that counsel failed to obtain a complete transcript of the first trial, which ended in a mistrial, and failed to interview jurors from the first trial.

6

The Court holds that claim (IV)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the trial transcript of the second trial and William Moffitt's affidavit, demonstrates that Moffitt, one of the attorneys who represented petitioner in his first trial, also represented petitioner in the second trial and obtained transcripts of portions of the first trial. Petitioner does not articulate how obtaining transcripts of the remainder of the first trial would have been helpful and does not specify how the lack of transcripts affected counsel's performance. Petitioner does not proffer what questions counsel should have asked jurors from the first trial, how the jurors would have responded, or how such information would have aided counsel's performance in the second trial. Counsel was not required to interview any jurors following the grant of a mistrial in the first trial. Lenz v. Warden, 267 Va. 318, 326, 593 S.E.2d 292, 296-97 (2004). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the first portion of claim (IV)(A)(1)(a), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to identify, interview, or call Todd Prach to testify to petitioner's location, activities, and appearance on the morning of the murders.

Petitioner alleges that Prach would have testified that, between 5:00 and 5:30 a.m. on the morning of the murders, he spoke with petitioner at Ft. Meade and observed no blood on or anything unusual about petitioner. Petitioner contends that Prach's testimony would have refuted the Commonwealth's suggested timeline for the morning of the murders because petitioner could not have committed the murders, cleaned himself and the crime scene, driven to the restaurant where he placed a call to Gragg, disposed of trash bags containing evidence, and then arrived at Fort Meade by 5:30 a.m.

The Court holds that the first portion of claim (IV)(A)(1)(a) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that petitioner's truck was seen in the neighborhood between 4:15 a.m. and 4:25 a.m. on the morning of the murders and petitioner repeatedly admitted that he was in the area of the murders at that time. No evidence was presented at trial concerning how much time petitioner spent cleaning the crime scene; however, petitioner was no longer in the house when police responded at 4:25 a.m. While petitioner contends that it would have been impossible for him to have cleaned himself up prior to seeing Prach, he fails to point to any evidence that the killer was bloody or where on the killer's person the blood would have been. In addition, the evidence presented at trial did not specify the exact time petitioner disposed of the trash bags. Thus, petitioner

8

has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the second portion of claim (IV)(A)(1)(a), petitioner asserts that counsel was ineffective for failing to adequately interview Kathy Elliott, petitioner's wife, who now claims she would have testified that, at 6:00 a.m. on the morning of the murders, petitioner returned home from a weekend away and did not appear unusual in appearance or demeanor and that petitioner had a reputation for being non-violent. Petitioner contends his wife could also have testified that petitioner had no recent bleeding from the scabbed abrasions on the back of petitioner's hand.

The Court holds that the second portion of claim (IV)(A)(1)(a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Kathy Elliott's affidavit, demonstrates that petitioner came home and immediately began doing a load of laundry and took a shower; raising an inference that petitioner was attempting to remove evidence linking him to the murders. Contrary to petitioner's argument, Kathy Elliott's affidavit does not reference the injury to petitioner's hand. Furthermore, the evidence demonstrates that petitioner and Gragg had worked together to defraud Kathy Elliott of a large sum of money, and trial counsel cannot be faulted for failing to pursue a witness whom petitioner had defrauded. Thus, petitioner has failed to demonstrate that counsel's performance was

deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the third portion of claim (IV)(A)(1)(a), petitioner alleges he was denied the effective assistance of counsel because counsel failed to adequately interview Kaitlynn Elliott, petitioner's daughter. Petitioner alleges he drove Kaitlynn to school in his truck the morning of the murders and that Kaitlynn noticed nothing unusual about her father or the truck and did not see any bags in the truck.

The Court holds that the third portion of claim (IV)(A)(1)(a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that the only evidence concerning the trash bags came from Gragg, who testified that petitioner called her from a restaurant and told her he had stopped to dispose of trash bags. No evidence established that trash bags were actually ever in petitioner's vehicle or specifically when petitioner disposed of the bags. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the first portion of claim (IV)(A)(1)(b), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to identify,

interview, or call key witnesses to testify about petitioner's interest in silencers for weapons to use on target ranges. Petitioner contends that several witnesses would have testified that they had discussed the possibility of creating a target shooting range at Ft. Meade and that petitioner sought information concerning silenced weapons for use at the range.

The Court holds that the first portion of claim (IV)(A)(1)(b) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and petitioner's e-mail to Randy Jackson, demonstrates that the information petitioner contends counsel should have elicited would have been cumulative. The jury was informed that petitioner sought information from Jackson on silencers purportedly as part of an investigation concerning the development of a shooting range in a building at Fort Meade. The jury was also aware that petitioner had then sent Gragg an e-mail concerning this inquiry and his plan to seek more information from different sources. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the second portion of claim (IV)(A)(1)(b), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to identify, interview, or call Gail and Terry McGraw, who would have testified

11

that Jackson, with whom petitioner had e-mailed about obtaining a silencer, had a romantic interest in Gail and was jealous of petitioner's friendship with Gail. Petitioner contends that Jackson's jealously would explain Jackson's motive to exaggerate his testimony to harm petitioner.

The Court holds that the second portion of claim (IV)(A)(1)(b) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to articulate how such testimony would not have constituted inadmissible hearsay. Furthermore, impeaching Jackson's testimony in this manner would not have undermined the evidence of the e-mail containing petitioner's inquiry into silencers immediately before the murders. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(A)(1)(c), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to identify, interview, or call key witnesses to testify about petitioner's habit of "compulsively cleaning" his vehicles. Petitioner asserts that Chris McSpadden and Robert Barrow would have testified that beer was spilled in petitioner's truck at a football game a few days before the murders, explaining any recent cleaning of the truck and rebutting

12

the Commonwealth's speculation of why the truck was so clean after the murders.

The Court holds that claim (IV)(A)(1)(c) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Evidence of petitioner's cleaning habits would also have bolstered the Commonwealth's case by reinforcing the expert witness testimony that a thorough, recent cleaning of the truck could have removed any evidence existing in it after the crimes. The fact that petitioner may have cleaned his truck in the days immediately preceding the murders does not negate a conclusion that petitioner also cleaned his truck after the murders. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(A)(1)(d), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to identify, interview, or call the victims' family members. Petitioner asserts that Robert Finch's parents and Dana Thrall's father would have testified about their various theories that Rebecca Gragg was responsible for the murders or that the murders were connected to Robert Finch's alleged illegal drug connections. These witnesses believed Gragg was responsible because she allegedly had previously arranged to have Robert Finch

13

beaten in West Virginia and she was afraid Finch would gain permanent custody of her children.

The Court holds that claim (IV)(A)(1)(d) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The trial court and this Court held that evidence of third party involvement was not proven; therefore, testimony on alternative theories of who committed the murders would not have been admissible under Johnson v. Commonwealth, 259 Va. 654, 681, 529 S.E.2d 769, 784, cert. denied, 531 U.S. 981 (2000). Furthermore, evidence of Gragg's alleged involvement in arranging the murders does not negate the evidence that petitioner actually committed the murders. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the first portion of claim (IV)(A)(1)(e), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to call Larry Kent Smith to testify that Gragg's relatives had previously beaten Finch and Finch had once told Smith that if Finch ever turned up dead, Gragg would have been responsible; Finch kept large amounts of money in the house; and Finch's dog, a 150-pound Mastiff, would not let anyone it did not know through the back gate of Finch's home.

14

The Court holds that the first portion of claim (IV)(A)(1)(e) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Smith's testimony about Gragg's relatives beating Finch and about Finch keeping money in his home would have constituted inadmissible hearsay. Furthermore, no testimony about the dog could impeach the fact that petitioner's DNA was found on the inside of the back gate of the home. Officer Creamer testified that when he entered the backyard the dog was calm and friendly. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the second portion of claim (IV)(A)(1)(e), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to call Dorothy Roberts, a secretary of the guardian ad litem appointed to represent the interests of the couple's children during the custody dispute between Finch and Gragg. Petitioner contends Roberts would have rebutted testimony that the couple's relationship was still intimate and would have contradicted Gragg's testimony that she kept Finch informed about his children's whereabouts.

The Court holds that the second portion of claim (IV)(A)(1)(e) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Any information provided by Roberts concerning the intimacy of Finch's and Gragg's

relationship and whether Finch was informed about his children's whereabouts would have constituted inadmissible hearsay. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the third portion of (IV)(A)(1)(e), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to call fifteen witnesses to testify to petitioner's reputation for being peaceable and non-violent.

The Court holds that the third portion of claim (IV)(A)(1)(e) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. While these witnesses may have been able to testify to petitioner's reputation for being non-violent, these witnesses would have been subject to cross-examination as to their knowledge of petitioner's relationship with Gragg and how petitioner and Gragg defrauded his wife of large amounts of money. Furthermore, in light of the sufficient evidence of petitioner's guilt, petitioner cannot demonstrate that testimony as to petitioner's reputation in those limited areas of his life would have had any significant impact on the jury's decision. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability

16

that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(A)(2), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to obtain key documents, identify key witnesses, and call crime scene reconstruction and blood spatter experts. Petitioner asserts that counsel failed to obtain petitioner's and Gragg's complete cell phone records with detailed cell tower information, which might have confirmed that petitioner made the 5:23 a.m. phone call to Gragg from his office parking lot, not at a restaurant. Petitioner also asserts that counsel should have obtained (1) Thrall's and Finch's financial records to discover whether they had a legitimate source of funds to purchase a $300,000 home, (2) medical records where Finch received treatment for his beating allegedly caused by Gragg's friends, and (3) police reports about the beating. Petitioner contends that this information would have bolstered the theory that Finch was involved in illegal activities and that others had a motive to kill Finch. Petitioner also asserts that counsel should have called a crime scene/blood spatter expert to challenge the Commonwealth's version of how the murders transpired.

The Court holds that claim (IV)(A)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner does not provide a copy of the cell phone records provided to counsel or a copy of any

17

unredacted records to establish what the records would have proven. As to evidence concerning a beating Finch received in West Virginia, the circuit court held that similarly suggestive evidence involving an altercation was inadmissible and that a theory of alternate killers was also inadmissible. Finally, petitioner provides no blood spatter analysis different from that presented at trial but merely speculates that a defense expert would have provided favorable evidence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B)(1) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to object when, during opening statement, the Commonwealth's Attorney called petitioner a "liar" and a "thief" who was willing to steal from his own family and failed to move for a new trial at the end of the Commonwealth's case, because the Commonwealth failed to prove what was asserted in the opening statement. Petitioner also contends counsel should have objected, during opening statement, when the Commonwealth's Attorney (1) read e-mails allegedly written by petitioner which were not marked as exhibits, authenticated, or admitted, (2) made inflammatory statements that petitioner was "flawed," and (3) showed the jury a photograph of the victims and their children.

18

The Court holds that claim (IV)(B)(1) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the Commonwealth's opening statement constituted a fair depiction of the evidence to be presented and a fair inference of what the evidence would prove and, thus, was not objectionable. Evidence is not usually authenticated at the time of opening statements and the e-mails were later authenticated by Gragg and admitted as evidence. Photographs of the victims are admissible and may be used in opening statements. Bennett v. Commonwealth, 236 Va. 448, 471, 374 S.E.2d 303, 317, (1988), cert. denied, 490 U.S. 1028 (1989). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the first portion of claim (IV)(B)(2) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel promised the jury in opening statements that he would play an audiotape of petitioner denying his guilt and ultimately did not play the tape.

The Court holds that the first portion of claim (IV)(B)(2) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in

19

Strickland.  The record, including the trial transcripts, demonstrates that counsel told the jury that there was a tape of Gragg's conversation with petitioner and that the jury could hear that during that conversation Gragg never mentioned the bloody bags or the phone call in which she mistook petitioner for Finch. Counsel may have intended to play the tape in order to impeach Gragg's testimony at trial.  Nevertheless, upon cross-examining her, counsel obtained Gragg's admission to these facts.  The transcript of the tape provided by petitioner demonstrates that counsel's subsequent decision not to play the tape was reasonable because the tape was merely cumulative and contained evidence that would have been detrimental to petitioner's defense.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the second portion of claim (IV)(B)(2) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel portrayed Gragg as a possible murder suspect rather than as someone who enlisted others to commit the murders.  Petitioner suggests that this error allowed the Commonwealth to rebut such a theory by showing that Gragg was out of town at the time of the murders.

The Court holds that the second portion of claim (IV)(B)(2) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that counsel suggested only that Gragg had a motive for the killings, but did not imply that Gragg actually committed the murders. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In the third portion of claim (IV)(B)(2) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase because counsel failed to address the issue concerning petitioner's blood on the back gate, the only physical evidence placing petitioner near the scene, thereby conceding a crucial point in the Commonwealth's case. Petitioner suggests that counsel could have argued that there was no way to determine when the blood got on the gate or how petitioner would have been able to go through the gate and past an aggressive dog.

The Court holds that the third portion of claim (IV)(B)(2) and this portion of claim (IV)(B)(10) do not satisfy the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that there was no evidence that petitioner had been inside that back gate at any

21

other time and no innocent explanation existed for why petitioner's blood was found on the inside of the locked gate. Petitioner has proffered no explanation for the presence of his blood on the gate. Furthermore, Officer Creamer testified at trial that when he entered the backyard from the house, the dog in the backyard was calm and friendly. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B)(3)(a) and a portion of (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to object to evidence offered by the Commonwealth that petitioner had committed other criminal or immoral acts. Petitioner asserts that the Commonwealth introduced evidence of (1) petitioner's alleged theft of money from his wife, (2) petitioner's alleged rape of Gragg when she was sedated prior to surgery, (3) petitioner's alleged illegal attempt to obtain a silencer, and (4) petitioner's alleged attempt to flee from police and evade arrest.

The Court holds that claim (IV)(B)(3)(a) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that the Commonwealth's theory of the case was that petitioner was enamored of Gragg and was motivated to kill Finch in order to please Gragg,

22

who was going through a child custody dispute with Finch. This evidence was relevant and admissible to prove petitioner's motive to kill Finch, the acts he took in furtherance of his plan to kill Finch, and as evidence of his guilt. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B)(3)(b) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to object to the introduction of evidence of petitioner's blood on the back gate. Petitioner asserts that the chain of custody pertaining to this evidence was not established and thus the evidence should have been inadmissible.

The Court holds that claim (IV)(B)(3)(b) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that Officer Leo collected the bloodstain and submitted it to the Department of Forensic Science; therefore, no meritorious objection was available to challenge the chain of custody of the DNA evidence. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

23

In claim (IV)(B)(3)(c) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to object to autopsy photographs and a crime scene videotape on the basis that the prejudicial impact outweighed any probative value and because the videotape was cumulative.

The Court holds that claim (IV)(B)(3)(c) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. This Court has established the admissibility, at trial, of autopsy photographs and crime scene videotapes. See, e.g., Gray v. Commonwealth, 233 Va. 313, 342, 356 S.E.2d 157, 173, cert. denied, 484 U.S. 873 (1987); Joseph v. Commonwealth, 249 Va. 78, 85, 452 S.E.2d 862, 867, cert. denied, 516 U.S. 876 (1995). Therefore, counsel reasonably did not make groundless objections to the photographs or videotape. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B)(4)(a) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to object to prejudicial hearsay testimony. Petitioner contends counsel should have objected to (1) Raymond Whalen's hearsay testimony concerning Gragg's trip to Florida; (2) Officer Daniel's

hearsay testimony about what a witness told him she saw on the night of the murders; (3) Laura Didion's hearsay testimony that Gragg was upset because Finch abused Gragg's children and that Gragg said she and Finch had an ongoing sexual relationship; (4) Suzanne Knowlinger's hearsay testimony that Gragg told her she had car trouble on her trip home from Florida; and (5) Jennifer Finch's hearsay testimony that Gragg told her that Finch and the Gragg children had been abused by Clayton Finch, Finch's father. Petitioner asserts this testimony improperly focused the jury on irrelevant evidence.

The Court holds that claim (IV)(B)(4)(a) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that (1) counsel successfully objected to the portion of Whalen's testimony which would have constituted hearsay; (2) Officer Daniel's testimony was not objectionable because it was used to explain why the officer was in the neighborhood investigating petitioner's truck; (3) Didion's testimony about Finch's abuse of his children did not contain hearsay testimony, and Didion's testimony about Gragg and Finch's relationship was not objectionable because it was not admitted for its truth but was used to show that petitioner believed Gragg and Finch were still sexually involved with each other; (4) Knowlinger's testimony contained no hearsay; and (5) Jennifer Finch's testimony was not objectionable because it was not

offered to prove that her father had abused Finch and Gragg's children, but as further evidence in support of petitioner's motive to gain favor with Gragg by killing Finch.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In footnote 44, petitioner alleges that he was denied the effective assistance of counsel because counsel failed to object to the admission of several exhibits as hearsay.  Petitioner does not articulate a reason as to why any of the exhibits are inadmissible hearsay, what arguments counsel should have made, or that any objections would have been successful.  The Court holds that the allegations made in footnote 44 are conclusional and, therefore, will not support the issuance of a writ of habeas corpus.  Penn v. Smyth, 188 Va. 367, 370-71, 49 S.E.2d 600, 601 (1948).

In claim (IV)(B)(4)(b) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to object to extrinsic testimony on collateral issues including testimony about Clayton Finch's alleged sexual abuse of Jennifer Finch, a neighbor's testimony concerning the manner in which Dana Thrall dealt with her children, information about a fire in Gragg's home, and testimony concerning Gragg's separation from her husband.

26

The Court holds that claim (IV)(B)(4)(b) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the evidence about which petitioner complains was relevant to establish petitioner's relationship with Gragg and his motive for the killings on Gragg's behalf. Petitioner fails to allege how objections to this evidence would have affected the outcome of his trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B)(5) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to elicit testimony that was admitted in the first trial. Petitioner asserts that counsel failed to ask questions challenging the competence of the crime scene investigation that were asked in petitioner's first trial.

The Court holds that claim (IV)(B)(5) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to allege anything more than that the evidence came out slightly different in the second trial. Petitioner does not articulate the testimony counsel would have elicited or how

27

this testimony would have affected the jury's decision. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B)(6) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to properly move to strike the evidence by stating no grounds for the motion when many compelling grounds existed and failed to move for a mistrial on those same grounds.

The Court holds that claim (IV)(B)(6) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the exhibits, demonstrates that the evidence was sufficient to overcome a motion to strike and to support petitioner's convictions. Elliott, 267 Va. at 425 n.8, 593 S.E.2d at 288 n.8. Petitioner fails to allege how a more specific motion to strike would have affected his case and fails to allege any viable basis upon which counsel should have sought a mistrial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B)(7) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to put on a defense, calling only one witness to the stand and asking only four questions of that witness. In support of claims (IV)(B)(7) and this portion of claim (IV)(B)(10), petitioner refers to his prior arguments concerning counsel's performance but makes no additional proffers as to the witnesses counsel should have called or what information counsel should have elicited. The Court holds that these claims constitute an allegation that the cumulative effect of counsel's ineffective assistance in the presentation of a defense prejudiced petitioner and holds that this claim has no merit. "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." Lenz, 267 Va. at 340, 593 S.E.2d at 305.

In claim (IV)(B)(8) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to object to the Commonwealth's improper statements in its closing arguments and failed to move for a mistrial. Petitioner asserts that the Commonwealth maligned petitioner's character by mentioning uncharged crimes of theft, use of a silencer, and flight to avoid prosecution. Petitioner also asserts that the Commonwealth

impermissibly vouched for the truthfulness of three of its witnesses.

The Court holds that claim (IV)(B)(8) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that the prosecutor's closing argument was properly based upon the evidence admitted at trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (IV)(B)(9) and a portion of claim (IV)(B)(10), petitioner alleges he was denied the effective assistance of counsel during the guilt phase of his trial because counsel failed to object to the jury's viewing, during deliberations, of the videotape of the crime scene and failed to ask for any cautionary instructions regarding the videotape. Petitioner contends that the probative value of the videotape was outweighed by its prejudicial impact.

The Court holds that claim (IV)(B)(9) and this portion of claim (IV)(B)(10) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Any objection concerning the prejudicial impact of the videotape should have been made prior to its admission into evidence. Having been properly admitted into evidence, the videotape was available

30

for the jury to view during deliberations.  Petitioner fails to articulate what type of objection counsel could have successfully made or what type of cautionary instruction counsel should have sought.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V)(A), petitioner alleges he was denied the effective assistance of counsel during the penalty phase because counsel failed to reassert motions raised in the first trial concerning the penalty phase, thus denying petitioner an opportunity to appeal these issues.

The record demonstrates that, after the mistrial, counsel informed the prosecutor that the motions previously argued and ruled upon by the trial court would not be re-litigated during the second trial, because the court's rulings were unlikely to change. Nothing in the record demonstrates that the court adopted its previous rulings and this Court, on direct appeal, held that the issues raised in the motions filed prior to the mistrial were not preserved for appellate review.  Elliott, 267 Va. at 427-28, 593 S.E.2d at 289-90.

The Court holds that claim (V)(A) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. Although petitioner identifies these motions in a footnote, he does not address the merits of the individual motions and does not

articulate the basis upon which an appellate challenge to any of the circuit court's previous rulings would have had merit or have been successful. Thus, petitioner cannot demonstrate that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V)(B)(1), petitioner alleges he was denied the effective assistance of counsel during the penalty phase because counsel failed to object to improper and prejudicial victim impact testimony. Petitioner asserts that Cyndia Johnson, Thrall's mother, improperly testified to watching her fatally wounded daughter shed tears. Petitioner also asserts that Cameron and Rebecca Thrall, Thrall's brother and sister-in-law, improperly testified about the effect of the murders on Dana Thrall's children and that counsel should have objected to the hearsay evidence of what the children were thinking and to the hearsay evidence of the children's posttraumatic stress disorder.

The Court holds that claim (V)(B)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Code § 19.2-264.4(A1) specifically allows victim impact testimony; therefore, Cyndia Johnson's testimony concerning what she observed during Dana's last minutes of life was admissible evidence. Furthermore, the testimony concerning the children's thoughts and their diagnoses was not offered to prove the truth of the matter asserted, i.e., that petitioner was going to harm the children or that the children

32

actually suffered particular disorders, but instead was offered to demonstrate how the murders affected the children. Counsel is not ineffective for failing to raise an unreasonable objection. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V)(B)(2), petitioner alleges he was denied the effective assistance of counsel during the penalty phase because counsel failed to object to the Commonwealth's Attorney's emphasis, during closing arguments, on the testimony concerning the children's counseling and nightmares. Petitioner also asserts that counsel should have objected to the argument that the victim's families would "get some solace" from the death sentence because Thrall's father and Finch's parents oppose petitioner being executed.

The Court holds that claim (V)(B)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The Commonwealth's Attorney's argument constituted a fair comment based upon the evidence, including the testimony of some members of Thrall's family. Whether members of Finch's family wanted petitioner sentenced to death would be irrelevant as petitioner was only subject to the death penalty for his killing of Thrall. Counsel is not ineffective for failing to raise an unreasonable objection. Thus, petitioner has failed to

demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V)(B)(3), petitioner alleges he was denied the effective assistance of counsel during the penalty phase because counsel failed to object to eleven statements made by the Commonwealth's Attorney that petitioner would be a future danger. Petitioner asserts that the issue of "future dangerousness" was not proven at the first trial; and that the trial court ruled it could not be reasserted in the second case due to double jeopardy concerns.

The Court holds that claim (V)(B)(3) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts, demonstrates that counsel successfully moved to preclude the Commonwealth from seeking the death penalty based upon future dangerousness. Later, when the Commonwealth argued that imposing the death sentence would preclude petitioner from harming anybody else, counsel objected on the grounds that future dangerousness was not an issue. The trial court, however, ruled that, despite its earlier ruling, the Commonwealth was entitled to make a general argument that imposition of the death sentence would prevent further harm. Petitioner has not articulated alternate grounds upon which he contends counsel should have objected and, having obtained an adverse ruling from the court, counsel is not

required to reassert objections that are meritless. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V)(B)(4), petitioner alleges he was denied the effective assistance of counsel during the penalty phase because counsel failed to object during closing argument to the Commonwealth's mention of petitioner's having sex with Gragg while she was unconscious. The Court holds that claim (V)(B)(4) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the prosecutor's argument was a proper comment based upon the evidence. As addressed previously, petitioner's statement to Gragg concerning a sexual encounter he allegedly had with her while she was sedated was admissible to prove his motive to kill Finch and as a "circumstance[] surrounding the offense." See Code § 19.2-264.4. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V)(C), petitioner alleges he was denied the effective assistance of counsel during the penalty phase because counsel failed to adequately develop and present mitigation

35

evidence. Petitioner asserts that he provided counsel with twenty-seven mitigation witnesses and that counsel erred in not calling these people as witnesses because they would have either testified about his good reputation or would have testified in favor of sparing petitioner's life.

The Court holds that claim (V)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the sentencing transcripts, demonstrates that the evidence petitioner contends counsel should have presented would have merely been cumulative of that presented at trial. Counsel called several witnesses during the penalty phase to testify to petitioner's qualities of being "easygoing, reliable, kind, gentle, generous, and decent." Additionally, the Commonwealth relied on this "reputation" evidence to argue that petitioner was an individual who solved problems, rather than getting angry, and that his act of killing Finch and Thrall was simply a selfish, calculated act designed to solve Gragg's problem and gain her affection. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (V)(D), petitioner alleges that the cumulative effect of counsel's ineffective assistance during the penalty phase prejudiced petitioner. The Court holds this claim has no merit.

36

"Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." Lenz, 267 Va. at 340, 593 S.E.2d at 305.

In claim (V)(E), petitioner alleges he was denied the effective assistance of counsel during the penalty phase because counsel failed to seek a continuance or other relief based on the pre-sentence report, which reflects Clayton Finch's belief that Detective Hoffman had "sabotaged" the defense.

The Court holds that claim (V)(E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The pre-sentence report does not include the basis for Clayton Finch's belief and petitioner provides nothing to substantiate an allegation that Detective Hoffman "sabotaged" petitioner's defense. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(A), petitioner alleges he was denied the effective assistance of counsel because during the guilt phase counsel withdrew his proffered "mere presence" instruction when the trial court required the instruction to be given with a "principal in the second-degree" instruction, and because counsel failed to request a "triggerman" instruction.

37

The Court holds that claim (VI)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Counsel reasonably made a tactical decision to avoid liability as a principal in the second-degree and to proceed under the theory, based on petitioner's statements, that petitioner committed no criminal act. Counsel's representation does not fall "below an objective standard of reasonableness" when counsel relies upon information supplied by his client. Curo v. Becker, 254 Va. 486, 493, 493 S.E.2d 368, 371 (1997)(citing Strickland, 466 U.S. at 688, 691). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(B)(1) and portions of (VI)(B)(2), petitioner alleges he was denied the effective assistance of counsel during the guilt phase because counsel failed to object to jury instructions and verdict forms. Petitioner asserts that instruction number 4 and the capital murder verdict form were erroneous because they told the jury that if it did not find that the murders were part of the same transaction, it must find petitioner was guilty of first-degree murder rather than second-degree murder. Petitioner further asserts the instruction and form should have included the element of malice.

The Court holds that claim (VI)(B)(1) and these portions of claim (VI)(B)(2) satisfy neither the "performance" nor the

38

"prejudice" prong of the two-part test enunciated in Strickland.
Instruction number 4 did not misstate the law of murder in
Virginia. This Court has previously held that where a jury is
instructed to determine "whether the killing was willful,
deliberate, and premeditated, ... a separate instruction on malice
[is] unnecessary." Mackall v. Commonwealth, 236 Va. 240, 254, 372
S.E.2d 759, 768 (1988), cert. denied, 492 U.S. 925 (1989). As the
jury found petitioner guilty of the capital murder of Dana Thrall,
petitioner cannot demonstrate that an instruction providing the
jury the option of finding second-degree murder, if it did not find
capital murder, would have affected the jury's decision. Thus,
petitioner has failed to demonstrate that counsel's performance was
deficient or that there is a reasonable probability that, but for
counsel's alleged errors, the result of the proceeding would have
been different.

In other portions of claim (VI)(B)(2) and in claims (VI)(B)(3)
and (VI)(B)(4), petitioner alleges he was denied the effective
assistance of counsel during the guilt phase because counsel failed
to object to language contained in the verdict forms. Petitioner
contends that by adding the language "as charged in the indictment"
to the verdict forms, and because the trial court failed to
instruct the jury as to the meaning of words such as "murder" and
"felony," the trial court rendered the forms confusing.

The Court holds that these portions of claim (VI)(B)(2) and
claims (VI)(B)(3) and (VI)(B)(4) satisfy neither the "performance"

39

nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the jury instructions and the verdict forms, demonstrates that the jury was adequately instructed and the verdict forms were not confusing. Additionally, petitioner has not provided this Court with the definitions he contends counsel should have sought. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(C)(1), petitioner alleges he was denied the effective assistance of counsel because counsel failed to request, at the penalty phase, an instruction, which had been given during the first trial's penalty phase, explaining how to evaluate victim impact testimony. Petitioner contends that counsel's failure to seek this instruction led the jurors to believe that the Commonwealth had met its burden of proving an aggravating circumstance merely by putting on victim impact testimony.

The Court holds that claim (VI)(C)(1) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that the jury was properly instructed that, before imposing a sentence of death, the jury must find that the Commonwealth proved beyond a reasonable doubt the aggravating circumstance that petitioner's "conduct in committing the offense was outrageously or wantonly vile, horrible, or inhuman in that it

40

involved torture, depravity of mind, or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder." There is no indication that the jury failed to follow the court's instructions and nothing to rebut the presumption that the jury did follow the instructions. See Emmett v. Commonwealth, 264 Va. 364, 371, 569 S.E.2d 39, 44 (2002) (holding that a jury is presumed to follow the instructions of the court). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(C)(2), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object, at the penalty phase, to defects in the signed capital murder verdict form, which referred to (1) "capital murder" with no definition, (2) "the offense," which petitioner contends is a vague and confusing term, and (3) "torture" and "depravity of the mind" for which, petitioner contends, there was no evidence.

The Court holds that claim (VI)(C)(2) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcripts and jury verdict forms, demonstrates that the jury was adequately instructed and the forms were not confusing. Furthermore, the jury instructions and verdict forms properly placed before the jury the task of determining whether the

41

Commonwealth had met its burden to prove that the murder of Dana Thrall involved torture, depravity of the mind, or aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder. The evidence presented at trial established beyond a reasonable doubt that Dana Thrall's murder involved aggravated battery beyond the minimum necessary to accomplish the act of murder. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(C)(3), petitioner alleges he was denied the effective assistance of counsel because counsel failed to provide the court, at the penalty phase, proper verdict forms for capital sentencing. Petitioner asserts the forms used erroneously required jurors to find unanimously that the Commonwealth failed to prove an aggravating factor in order to sentence petitioner to life. In claim (VI)(C)(4), petitioner alleges he was denied the effective assistance of counsel because counsel failed to request an instruction, at the penalty phase, on unanimity on "vileness" and counsel failed to object to instruction 1 on the basis that it improperly permitted the jury to find "vileness" without requiring specification of, and unanimous agreement about, that statutory element.

The Court holds that claims (VI)(C)(3) and (VI)(C)(4) satisfy neither the "performance" nor the "prejudice" prong of the two-part

test enunciated in Strickland. Counsel is not unreasonable for failing to object to jury instructions and verdict forms that follow the statute and have previously been approved by this Court. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(C)(5), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object, at the penalty phase, to inclusion of the term "torture" in the instructions or verdict form or, in the alternative, because counsel did not ask that "torture" be defined.

The Court holds that claim (VI)(C)(5) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Counsel is not unreasonable for failing to object to jury instructions and verdict forms that follow the statute and have previously been approved by this Court. Furthermore, petitioner does not articulate the grounds upon which counsel could have reasonably objected to the use of the word "torture" in the instructions and on the verdict form. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

43

In claim (VI)(C)(6), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object, at the penalty phase, to the inclusion of the "depravity of mind" element in the vileness instruction when no evidence of "depravity of mind" existed.

The Court holds that claim (VI)(C)(6) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Counsel is not unreasonable for failing to object to jury instructions that follow the statute and have previously been approved by this Court. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(C)(7), petitioner alleges he was denied the effective assistance of counsel because counsel failed to propose and request that the instructions include a definition of the element of "aggravated battery beyond the minimum necessary to accomplish the act of murder." Petitioner contends that failure to request such a definition invited the jury to speculate as to the definition of aggravated battery or to assume that the mere act of murder would be sufficient to satisfy this element.

The Court holds that claim (VI)(C)(7) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Instruction No. 1,

44

demonstrates that the plain language of the instruction "aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder" provided the definition petitioner contends counsel should have requested. Furthermore, the instruction as given required the jury to find more than "the mere act of murder" to satisfy this element. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(C)(8), petitioner alleges he was denied the effective assistance of counsel because counsel failed to object that Instruction No. 6 contradicted Instruction No. 5. Petitioner contends that the instructions are identical except that one instructs that the punishment is three years and the other instructs that the punishment is five years.

The Court holds that claim (VI)(C)(8) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the jury instructions, demonstrates that the instructions numbered five and six concerned the punishments the jury was to impose for petitioner's two convictions for use of a firearm in the commission of a murder, which were statutorily fixed at three years and at five years, respectively. Counsel is not unreasonable for failing to object to jury instructions that follow the statute. Furthermore, as the jury had no discretion concerning these sentences, petitioner

45

cannot demonstrate how any alleged confusion impacted the sentence he received.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(C)(9), petitioner alleges counsel failed to propose instructions for the penalty phase on the following five legal principles: "defendant is presumed innocent," "he does not have to testify," "he does not have to produce any evidence," "the burden is on the Prosecution," and the burden is "beyond a reasonable doubt."  Petitioner contends that the failure to instruct the jury on these principles at the penalty phase was confusing because they had been instructed on them during the guilt phase.

The Court holds that claim (VI)(C)(9) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The record, including the trial transcript, demonstrates that the jury was properly instructed at the penalty phase as to the Commonwealth's burden to prove the aggravating factors beyond a reasonable doubt.  Upon the jury's determination that petitioner was guilty of the offenses for which it would be sentencing him, petitioner was no longer presumed innocent and an instruction otherwise would have been erroneous. Petitioner presented evidence in mitigation and, thus, an instruction that petitioner was not required to present evidence

46

would have been confusing. Finally, the jury was instructed during the guilt phase that petitioner was not required to testify. Petitioner fails to provide a legal basis for re-instructing the jury on this issue. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VI)(D), petitioner states that the Court should grant an evidentiary hearing on whether the jury had requested an instruction on reasonable doubt. Petitioner contends that he was unaware of a note from the jury requesting such an instruction until the direct appeal proceeding. On appeal, we declined to address the issue because it was based on pure speculation and held that petitioner's requested relief in the form of an evidentiary hearing could not be afforded on direct appeal. Elliott, 267 Va. at 414-15 & n.4, 593 S.E.2d at 282 & n.4. Petitioner asks that his convictions and sentences be reversed for failure to answer the jury question or in the alternative "a new trial or hearing [be granted] to establish that the request was made and not communicated to the Defense."

The Court holds that claim (VI)(D) is not cognizable in a habeas corpus proceeding. Petitioner raises no allegations that this issue is the result of ineffective assistance of counsel or misconduct and provides no evidence that "the jury actually intended to send the purported jury question at issue to the trial

47

court for a response." Id. at 414-15, 593 S.E.2d at 282.  "The function of a writ of habeas corpus is to inquire into jurisdictional defects amounting to want of legal authority for the detention of a person on whose behalf it is asked.  The court in which a writ is sought examines only the power and authority of the court to act, not the correctness of its conclusions, and the petition for a writ may not be used as a substitute for appeal or writ of error."  Brooks v. Peyton, 210 Va. 318, 321, 171 S.E.2d 243, 246 (1969).

In claim (VII)(A), petitioner alleges he was denied the effective assistance of counsel on appeal because counsel failed to assign error to the trial court's ruling which allowed the Commonwealth to make an argument on future dangerousness and on the Commonwealth's improper argument regarding victim impact testimony.

The Court holds that claim (VII)(A) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The selection of issues to address on appeal is left to the discretion of appellate counsel and counsel need not address every possible issue on appeal.  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  The record, including the trial transcript, demonstrates that the jury was properly instructed that it could impose the death penalty only if it were to find that the Commonwealth had proven the vileness aggravating factor beyond a reasonable doubt.  A jury is presumed to follow its instructions and petitioner has provided no basis upon which his appellate

48

counsel could have argued that either the trial court's ruling was incorrect or that the jury did not follow the court's instructions. Furthermore, petitioner concedes that no argument or objection was made concerning the victim impact evidence and, therefore, this argument was not preserved for appeal. Rule 5:25. Petitioner also does not articulate the substantive legal argument he contends counsel should have made on these issues or how such argument would have had merit. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VII)(B), petitioner alleges he was denied the effective assistance of counsel on appeal because counsel requested the wrong relief when counsel requested an evidentiary hearing instead of asking the Court to reverse his conviction on the basis of an alleged unanswered jury question found in the record.

The Court holds that claim (VII)(B) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. The record, including this Court's opinion, demonstrates that this Court could not consider petitioner's arguments on this issue because the record was incomplete and, therefore, any consideration would have required this Court to engage in improper speculation. Elliott, 267 Va. at 414-15, 593 S.E.2d at 282. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for counsel's failure to seek reversal rather than an

evidentiary hearing, the result of the proceeding would have been different.

In claim (VII)(C), petitioner alleges he was denied the effective assistance of counsel on appeal because counsel failed to present argument for and, thereby, waived assignments of error 8, 9, 10, 13, and 14. Assignments of error 8, 9 and 10 each concerned the alleged "smoke break" statement Gragg made to police, which Gragg claimed was memorialized and signed by her. Assignments of error 13 and 14 concerned the sufficiency of the evidence to support petitioner's convictions.

The Court holds that claim (VII)(C) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and the appellate brief, demonstrates that assignments of error 8, 9, 10, 13 and 14 were without merit. This Court determined on direct appeal that there was ample evidence to support petitioner's convictions. Furthermore, the arguments raised in assignments of error 8, 9 and 10 were not preserved at trial and would have been barred by Rule 5:25, as counsel had been given the opportunity to impeach Gragg's testimony concerning the alleged statement and counsel had asked for no other relief. The selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Barnes, 463 U.S. at 751-52. Counsel is certainly not deficient for choosing to focus his arguments on issues that

had been properly preserved at trial. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VII)(D), petitioner alleges he was denied the effective assistance of counsel on appeal because counsel failed to cite authority requiring the adoption of a narrowing instruction regarding the vileness factors.

The Court holds that claim (VII)(D) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. This Court does not require a trial court to define the statutory terms or for a jury to receive instructions beyond the statutory factors. See Bunch v. Commonwealth, 225 Va. 423, 442, 304 S.E.2d 271, 282, cert. denied, 464 U.S. 977 (1983). Furthermore, the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000) does not require jury instructions on the definitions of the composite parts of Virginia's vileness aggravator. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VII)(E), petitioner alleges he was denied the effective assistance of counsel on direct appeal because counsel failed to argue that, based on errors made during the trial, the perjured testimony, prosecutorial misconduct, and the fact that the

evidence against petitioner was minimal, circumstantial, and conflicting, the jury's verdict was not the product of a reasoned and dispassionate deliberation.

The Court holds that claim (VII)(E) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  On direct appeal, this Court reviewed the record and considered, as required by Code § 17.1-313(C)(1), whether the jury imposed petitioner's death sentence under the influence of passion, prejudice, or any other arbitrary factor and determined that the sentence was appropriate.  Petitioner does not articulate how an affirmative argument by counsel would have affected this Court's mandatory review, nor does petitioner articulate the specific arguments he contends counsel should have made.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In claim (VIII), petitioner claims that the cumulative effect of all the preceding claims demonstrates that the Court should grant petitioner relief.  The Court holds that claim (VIII) has no merit.  "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." Lenz, 267 Va. at 340, 593 S.E.2d at 305.

Upon consideration whereof, petitioner's motions for leave to issue subpoenas duces tecum; for leave to depose petit jurors; for leave to propound interrogatories; for an order releasing physical evidence for examination and authorization to retain a DNA expert, a crime scene reconstruction expert, a blood spatter expert, and a fingerprint expert; for leave to conduct depositions of witnesses; for leave to amend his habeas corpus petition with a recently discovered due process claim and to conduct discovery; and for oral argument are denied.  Upon further consideration whereof, the respondent's motion to strike petitioner's exhibits containing hearsay testimony is denied and the exhibits are considered pursuant to the appropriate evidentiary rules; petitioner's motion to strike a letter and an exhibit filed in support of the warden's motion is denied.

Accordingly, the petition is dismissed.

This order shall be published in the Virginia Reports.

A Copy,

Teste:


Patricia L. Harrington, Clerk

53